PER CURIAM.
Lockheed Martin Corporation [“Lockheed”] appeals an Unemployment Appeals Commission’s [“Commission”] affirmance of an appeals referee order awarding unemployment compensation benefits to Timothy J. Steinmetz [“Steinmetz”] after his termination for misconduct.
The findings of fact made by the appeals referee were as follows:
The claimant worked as a launch inspector for Lockheed Martin Corporation from March 1, 1989 to December 18, 2001. The employer had a policy that prohibited sexual harassment. The policy prohibited “All immoral or indecent conduct ... including sexual harassment.” It defined harassment, in part, as “physical conduct, touching, assault, impeding or blocking movements.” The claimant was aware of the policy through yearly training sessions, printed materials and a computerized training program. The claimant and at least two of his co-workers, a male and a female, disregarded the policy over a period of several years. They engaged in physical “horseplay” that included touching or grabbing each other’s buttocks, crotches and breasts. Their immediate supervisors were aware of this behavior, but chose to disregard it. No complaints were made by the participants. In late 1999 the claimant placed his hands on the breast of the female coworker and twisted them as though they were knobs. She told him to stop and not to touch her. He did not touch her again.
There were no incidents of such behavior by the claimant thereafter. Another coworker had witnessed the final incident. Approximately two years later that worker filed a sexual harassment complaint against the employer. She had not complained about or reported that incident at the time it happened. She did mention the incident when discussing her complaint with the employer’s senior human resource manager for launch operations. She mentioned also that she had objected to the claimant touching her hair while they were riding in a cart. It had blown up into his face. She had no other complaints about the claimant’s actions toward her. The human resources manager confronted the claimant and then discharged him for his reported actions prior to January 2000. *33 The claimant was later offered re-employment without conditions and returned to work after thirty-seven days. The other two workers who had participated in horseplay were suspended for thirty-seven days so that their punishment was equal to his.
[[Image here]]
The testimony of both parties established that the employer had a sexual harassment policy that included the actions admitted by the claimant. Witnesses for both parties testified that the employer’s on-site supervisors condoned the actions of the claimant and his co workers. The record shows that none of the participants complained. Even the worker that eventually reported the claimant’s actions did not complain of the incident she witnessed, but mentioned it in passing while discussing other matters with a human resources official. It appears that the employer only decided to enforce its policy after it was threatened with legal action. It discharged the claimant, but soon reconsidered [sic] he was unconditionally reinstated. A policy that is not enforced is not a policy, but a suggestion. The record shows that the claimant voluntarily discontinued the actions for which he was discharged after the previously provocative and compliant female coworker told him to stop. In any case, the claimant’s last offence [sic] was two years prior to discharge, which is too distant in time to provide good grounds for discharge.
The issue is whether Steinmetz was properly discharged for “misconduct,” i.e. violation of Lockheed-Martin’s policy against “immoral or indecent conduct ... including sexual harassment.” There is little factual dispute that the behavior of Steinmetz violated the policy. It appears, however, that the appeals referee reached the legal conclusion that such conduct is not “misconduct” where: 1) the on-site supervisors of the employer “chose to disregard it;” 2) the victim failed to complain; 3) the other employees who witnessed it failed to complain; 4) the employer appeared to decide to enforce its policy only after threatened with a lawsuit by a witness to the behavior; and 5) it had happened two years before the discharge. None of these reasons eliminate the misconduct.
First, the victim’s acquiescence in or the failure of on-site supervisors to enforce the policy does not constitute a waiver or es-toppel against the employer. Historically, this type of behavior has been condoned by supervisors or has gone unpunished in the workplace. A key reason such policies were made express and emphasized through training is to make clear that such behavior is misconduct, without regard to complaint by the victim or rebuke by the on-site manager. This is essential because such conduct adversely affects others in the workplace, not just the victim or participant.
As for the final two reasons, there are no findings of fact to establish, and nothing we see in the record suggests, that once Lockheed’s human resource manager learned of the conduct, she did not act promptly to discharge Steinmetz. Such misconduct does not dissipate with the passage of time any more than would an employee’s theft, breach of confidentiality or other misdeed.
REVERSED and REMANDED.
SAWAYA, C.J., GRIFFIN and PALMER, JJ., concur.